**Not for publication**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                    :
UNITED BOATMEN, et al.,             :
                                    :
            Plaintiffs,             :    Civil Action No. 09-5628
    v.                              :
                                    :    **OPINION**
GARY LOCKE, et al.,                 :
                                    :
            Defendants.             :
_____ :

PISANO, District Judge:

      Presently before the Court is a Motion for Judgment on the Pleadings filed pursuant to Fed. R. Civ. P. 12(c) by Gary Locke, in his capacity as Secretary of the United States Department of Commerce; the National Oceanic and Atmospheric Administration; and the National Marine Fisheries Service (collectively, "Defendants"). Plaintiffs United Boatmen, *et al.* ("Plaintiffs"), oppose Defendants' motion. For the reasons that follow, the Court finds that the issues presented are moot and, therefore, Defendants' motion is granted.

I.    Background

      The Magnuson-Stevens Fishery Conservation and Management Act ("MSA" ) was enacted by Congress in 1976 to "conserve and manage the fishery resources found off the coasts of the United States." 16 U.S.C. § 1801(b)(1). To achieve this purpose, the MSA established eight regional fishery management councils composed of fishery management officials, commercial and recreational fishery participants, and other individuals with scientific expertise or other training or experience in fishery conservation and management. 16 U.S.C. § 1852. The councils must submit fishery management plans ("FMPs") to the Secretary of Commerce, acting

through the National Marine Fisheries Service ("NMFS"), that adhere to ten statutory, national standards for fishery conservation and management. 16 U.S.C. § 1851. NMFS then reviews the FMP for consistency with the national standards and solicits public comment, after which it approves, disapproves, or partially approves the FMP. 16 U.S.C. § 1854(a). If the FMP is not completely approved, NMFS must explain why and make corrective recommendations; if the FMP is approved, then NMFS reviews the implementing regulations proposed by the councils for consistency with the FMP and solicits further public comment. 16 U.S.C. § 1854(a)-(b). Final implementing regulations, once promulgated by NMFS, have the force and effect of law.

The Mid-Atlantic Fishery Management Council (the "Council") developed the Black Sea Bass FMP in cooperation with the Atlantic States Marine Fisheries Commission (the "Commission") as an amendment to the Summer Flounder, Scup, and Black Sea Bass Fishery Management Plan. Fisheries of the Northeastern United States, "Amendment 9 to the Summer Flounder, Scup, and Black Sea Bass Fishery Management Plan," 61 Fed. Reg. 43,217 (Aug. 21, 1996). The Council submitted the amendment to NMFS, which implemented it in May 1996. *Id.* The amendment revised the FMP to provide management measures for the Black Sea Bass fishery, including commercial quotas, recreational harvest limits, size limits, gear restrictions, permits, and reporting requirements. *Id.* On January 2, 2009, NMFS issued its final rule to establish that the recreational harvest limit ("RHL") for Black Sea Bass in 2009 was 1.14 million pounds. Fisheries of the Northeastern United States; Summer Flounder, Scup, and Black Sea Bass Fisheries; 2009 Summer Flounder, Scup, and Black Sea Bass Specifications; Preliminary 2009 Quota Adjustments; 2009 Summer Flounder Quota for Delaware, 74 Fed. Reg. 29 (Jan. 2, 2009).

NMFS estimates annual landings in the Black Sea Bass recreational fishery based largely on the results of the Marine Recreational Fishery Statistics Survey ("MRFSS").  *See, e.g.,* Fisheries of the Northeastern United States; Black Sea Bass Recreational Fishery; Emergency Rule, 74 Fed. Reg. 51,092, 51,092-93 (Oct. 5, 2009) (estimating 2009 landings based on MRFSS data).  Historically, MRFSS has used random telephone and intercept surveys to estimate fishing effort, catch, and participation.  *See, e.g., New York v. Locke*, 2009 WL 1194085, *4 (E.D.N.Y. 2009) ("MRFSS data is collected by two independent surveys: (1) a telephone survey of households in coastal counties, and (2) an 'intercept,' or interview survey of anglers by trained interviewers stationed at fishing access sites.").  On January 1, 2010, however, NMFS introduced a new registry program designed to improve NMFS's ability to collect data on fisheries such as the Black Sea Bass recreational fishery.  Marine Recreational Fisheries of the United States; National Saltwater Angler Registry Program, 73 Fed. Reg. 79,705 (Dec. 30, 2008).  The new program, called the National Saltwater Angler Registry Program ("NSARP"), requires recreational anglers and for-hire fishing vessels that engage in angling and spearfishing for marine and anadromous fish to register annually with NMFS.  *Id.* at 79,706.  The intention of NSARP is to use subsequent sampling from the registry, as it grows, to replace the telephone survey data from MRFSS.  *Id.*

On September 29, 2009, NMFS concluded, along with the Council and the Commission, that the "best available information" from the MRFSS indicated that the 2009 RHL for Black Sea Bass had been "greatly exceeded."  74 Fed. Reg. at 51,092-93 (Oct. 5, 2009).  Accordingly, NMFS established a temporary, emergency rule to close the Black Sea Bass recreational fishery in the exclusive economic zone (i.e., from 3 to 200 nautical miles offshore) from Cape Hatteras to Maine for a period of 180 days (the "Emergency Rule").  *Id.*  The Emergency Rule was

implemented swiftly and without public comment to mitigate the magnitude of overage and avoid potential closure of the recreational fishery in the exclusive economic zone for all of 2010. *Id.*  In April 2010, NMFS extended the closure to the end of May 21, 2010.  Fisheries of the Northeastern United States; Black Sea Bass Recreational Fishery; Emergency Rule Correction and Extension, 75 Fed. Reg. 17,618 (Apr. 7, 2010).  On May 22, 2010, participants in the Black Sea Bass recreational fishery were allowed to resume fishing pursuant to the Summer Flounder, Scup, and Black Sea Bass FMP.  *Id.*

On November 4, 2009, Plaintiffs filed this action challenging the Emergency Rule. (Docket Entry no. 1).  On January 21, 2010, Defendants filed their answer and administrative record supporting the Emergency Rule.  (Docket Entry no. 8).  On June 16, 2010, Defendants filed their motion for judgment on the pleadings to address the matter of subject matter jurisdiction before reaching the merits of the ase.  (Docket Entry no. 23).  The administrative record was finally settled on July 22, 2010, when Magistrate Judge Lois Goodman denied Plaintiffs' motion to supplement the record.  (Docket Entry no. 33).

II.     Standard of Review

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings "after the pleadings are closed but within such time as not to delay trial . . ." Fed. R. Civ. P. 12(c).  The applicable standard on a motion for judgment on the pleadings is materially the same standard applied on a motion to dismiss pursuant to Rule 12(b)(6).  *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004).  In reviewing a motion made pursuant to Rule 12(c), a court must take all allegations in the complaint as true, viewed in the light most favorable to the plaintiff.  *Gomez v. Toledo*, 446 U.S. 635, 636 n.3 (1980); *Robb v. City of Philadelphia*, 733 F.2d 286, 287 (3d Cir. 1984).  Under Rule 12(c), "judgment will not be granted unless the

movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988) (citation omitted).

III.     Discussion

The Constitution grants federal courts the authority to exercise jurisdiction only where there is a "case or controversy." U.S. Const. art. III, § 2. Accordingly, "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S. Ct. 1704, 1705 (1974) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). When the questions presented before a court are no longer "live," a case becomes moot. *Thomas v. Att'y Gen. of U.S.*, 625 F.3d 134, 140 (3d Cir. 2010) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). This may result from a change in circumstances after the commencement of the litigation that precludes any occasion for meaningful relief. *Surrick v. Killion*, 449 F.3d 520, 526 (3d Cir. 2006).

There are, however, exceptions to the mootness doctrine, including when the dispute between the parties is "capable of repetition, yet evading review." "That exception applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Davis v. Federal Election Comm'n*, 554 U.S. 724, 735, 128 S. Ct. 2759, 2769 (2008) (omitting internal quotation marks). The Third Circuit recently reiterated that "[t]he exception from the mootness doctrine for cases that are technically moot but 'capable of repetition, yet evading review' is narrow and available 'only in exceptional situations.'" *Rendell v. Rumsfeld*, 484 F.3d 236, 241 (3d Cir. 2007) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)).

The Emergency Rule closing the Black Sea Bass recreational fishery was lifted May 22, 2010, which would typically render this case moot. Nevertheless, Plaintiffs claim that the emergency closing of the Black Sea Bass recreational fishery falls within the "capable of repetition, yet evading review" exception to the mootness doctrine. Defendants counter that Plaintiffs' case fails the second prong of the exception—there is no reasonable expectation that the same action will recur—and thus the case is moot.

For the "capable of repetition, yet evading review" exception to the mootness doctrine to apply, there must be a "reasonable expectation," if not a "demonstrated probability," that the same action will recur. *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1184 (1982). "[M]ere physical or theoretical possibility" of repetition will not suffice. *Id.* "Capable of repetition" is a substantive term for which Plaintiff "must provide a reasonable quantity of proof—perhaps even by the preponderance of the evidence." *N.J. Tpk. Auth. v. Jersey Cent. Power and Light*, 772 F.2d 25, 33 (3d Cir. 1985). Plaintiffs have failed to provide such a quantity of proof. An emergency, in-season decision to close a fishery is a very unusual occurrence and highly dependent on facts specific to the date and time of the closure. *See* 74 Fed. Reg. at 51,092-93 (explaining the detailed findings required for the Emergency Rule). Such facts may include the quantum of fish landed in a given year, fishing effort, fishing gear, fecundity, ocean water temperatures (which affect breeding), and the stock remaining at sea. Defs. Br. at 13-14. Indeed, even Plaintiffs have characterized the emergency closure as "unprecedented." Compl. ¶ 2; Pls. Br. at 11. As such, Plaintiffs have not shown a "reasonable expectation" that the same action will recur.

Plaintiffs argue that Defendants' continued use of flawed MRFSS data creates a reasonable expectation that an emergency closure of the Black Sea Bass recreational fishery will

recur. As noted above, however, an emergency closure is highly dependent on facts specific to the date and time of the closure. Furthermore, Defendants are in the process of replacing the MRFSS data scheme with NSARP, such that future data collection in the Black Sea Bass recreational fishery will take place under an entirely different regulatory scheme. *See* 73 Fed. Reg. 79,705 (Dec. 30, 2008). Although Defendants will continue for some time to use MRFSS data while the registry for NSARP becomes more robust, *see* Letter from Defs. dated September 20, 2010 (Docket Entry no. 36), Plaintiffs acknowledge that Defendants "are in the midst" of a project to improve and refine data collection, Pls. Br. at 26, and as of 2010, were using new data collection methods "side-by-side" with the telephone surveys, Pls. Br. at 6. Thus, any argument based on the allegedly flawed MRFSS is moot and not capable of repetition because Defendants are in the process of changing MRFSS. *See* N.J. Tpk. Auth., 772 F.2d at 31("[T]he cessation of the conduct complained of makes the case moot if subsequent events make it clear that the wrongful behavior could not reasonably be expected to recur—even where the offending conduct, by its nature, evades review.").

Plaintiffs also allege that Defendants violated the procedures and requirements of various statutes when they closed the Black Sea Bass recreational fishery. Because these procedures and requirements have not changed, Plaintiffs argue, there is a reasonable expectation that an emergency closure of the Black Sea Bass recreational fishery will recur. Pls. Br. at 19-20. This logic is flawed. Plaintiffs take issue with Defendants' alleged violations of statutory requirements, rather than the requirements themselves. The alleged violations, however, are moot because the closure has been lifted and there is no occasion for meaningful relief. Though the procedures and requirements themselves remain, Plaintiffs provide no support for an argument that their continued existence creates a reasonable expectation that an emergency

closure will recur.  Indeed, Plaintiffs did not challenge the procedures or requirements of the statutes themselves, but only their alleged violation by Defendants' implementing the emergency closure.  Therefore, the persistence of the statutes cited by Plaintiffs does not make an emergency closure of the Black Sea Bass recreational fishery "capable of repetition, yet evading review."

IV.     Conclusion

For the reasons above, Plaintiffs' claims are moot and must be dismissed.  Defendants' motion for judgment on the pleadings is granted.  An appropriate Order accompanies this opinion.

/s/ JOEL A. PISANO
United States District Judge

Dated: February 25, 2010